IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PATRICK ANNIS, *et al.*, | : |
| *Plaintiffs*, | : |
| vs. | : Case No. 1:21-cv-325 |
| PLUMBERS, PIPE FITTERS & MECHANICAL EQUIPMENT SERVICE LOCAL UNION NO. 392 HEALTH AND WELFARE FUND, *et al.*, | : Judge Jeffery P. Hopkins |
| *Defendants*. | : |

# OPINION AND ORDER

Patrick and Cynthia Annis ("Plaintiffs") filed this ERISA action after Mrs. Annis was denied coverage for medical benefits under the Plumbers, Pipe Fitters & Mechanical Equipment Service Local Union No. 392 Health and Welfare Fund (the "Plan"). The action is against the Plan and its administrator, the Board of Trustees of the Plumbers, Pipe Fitters and Mechanical Equipment Service Local Union No. 392 Health and Welfare Fund (the "Board"). Compl., ¶ 2. The Administrative Record was filed. Doc. 13. Both sides now move for judgment thereon. Docs. 14, 15. For the reasons below, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 14) and **DENIES** Plaintiffs' Motion for Summary Judgment. Doc. 15.

I.  FACTUAL BACKGROUND

Patrick and Cynthia Annis are participants in the Plan. Doc. 13, PageID 65. In 1985, Mrs. Annis underwent elective breast augmentation surgery. *Id.* Her silicone implants were replaced in 1991 after one ruptured. *Id.* In February 2020, Mrs. Annis suspected another

rupture and thereafter sought medical advice from Hauw T. Han, M.D. *Id.* at PageID 72. Dr. Han sent a prior authorization request to the Plan's utilization review manager, Med-Care Management ("MCM"), to determine whether the removal of the implants would be covered under the Plan. *Id.*; *id.* at PageID 110. In his request, Dr. Han noted capsular contracture with possible rupture and recommended bilateral capsulectomy with removal of both implants. *Id.* at PageID 72. A few weeks later, representatives of MCM and Dr. Han spoke by phone. *Id.* at PageID 73. During that phone call, Dr. Han's office confirmed that Mrs. Annis' original procedure "was cosmetic in nature." *Id.* MCM then explained that any care provided "to correct a cosmetic procedure" would be excluded from Plan benefits. *Id.* Thereafter, MCM sent a Plan Exclusion Notice to Dr. Han advising that the Plan would not cover the recommended surgery because it was cosmetic. *Id.* at PageID 70.

Mrs. Annis sought a second opinion from Neil Kundu, M.D. In a February 24, 2020 treatment note, Dr. Kundu concluded that Mrs. Annis "[w]ould benefit from" removal of the implants, but that "prior to any procedure, given the asymmetry, duration of implants, etc.," Mrs. Annis would need diagnostic imaging. *Id.* at PageID 83.

Mrs. Annis received a mammogram and breast ultrasound from Joseph Benjamin, M.D. on March 9, 2020, and a breast MRI on March 16, 2020. *Id.* at PageID 86. The imaging revealed a "complex fluid collection" surrounding her left implant and a "0.6 cm oval mass in the 1 o'clock right breast." *Id.* at PageID 86, 93. Dr. Benjamin noted that the mass was "probably benign," but that the fluid collection raised a "concern for BIA-ALCL." *Id*. at

PageID 93, 96. According to MCM, BIA-ALCL (or breast implant-associated[1] anaplastic large cell lymphoma) "is a risk associated with the use of implants. Most cases occur in the capsule surrounding the implant." *Id.* at PageID 65.

Dr. Benjamin proceeded to perform an ultrasound-guided aspiration and core biopsy on the fluid collection. *Id.* at PageID 93. Two days later, he updated the treatment note to reflect that "no malignant cells [were] identified" in the pathology report. *Id.* at PageID 85.

Mrs. Annis returned to Dr. Kundu's office for a June 12, 2020 visit. *Id.* at PageID 69. Dr. Kundu again concluded that Mrs. Annis "[w]ould benefit from explantation of her implants with complete capsulectomies." *Id.* After a pathological review of the excised capsules was complete, he and Mrs. Annis would "be able to discuss potential reaugmentation[.]" *Id.* Dr. Kundu noted that "[e]xplantation of the implant with complete capsulectomy is the definitive method to confirm the diagnosis of ALCL." *Id.*

A few days later, MCM sent a Plan Exclusion Notice to Dr. Kundu advising the Plan would not pay for the breast implant removal surgery because "complications from cosmetic surgery [are] not covered." *Id.* at PageID 75. MCM advised some time later that, if Dr. Kundu "feels there is a medical concern for lymphoma his notes would have to indicate this, that after all the testing and biopsies the only way to confirm would be to remove the implants." *Id.* at PageID 79.

---

[1] The parties neither explain nor dispute the meaning of "BIA." The Court thus takes judicial notice of the fact that BIA stands for "breast implant-associated." *See* U.S. Food & Drug Administration, *Questions and Answers about Breast Implant-Associated Anaplastic Large Cell Lymphoma (BIA-ALCL)*, https://www.fda.gov/medical-devices/breast-implants/questions-and-answers-about-breast-implant-associated-anaplastic-large-cell-lymphoma-bia-alcl (last visited May 2, 2025).

In February 2021, Plaintiffs appealed the Plan's decision to deny coverage for the implant removal surgery. *Id.* at PageID 66–68. The Board denied the appeal in a March 12, 2021 letter, explaining:

> You submitted a request for pre-authorization for a revision of breast augmentation surgery under the Comprehensive Major Medical Benefit. Your claim was denied because these expenses are not covered under the Plan.
>
> You requested an appeal of this adverse benefit determination pursuant to the Plan's claim and appeal procedures. Under the Plan's procedures, the Board conducts a full and fair review of the claim and adverse benefit determination. On February 25, 2021, the Board reviewed your claim and considered the terms of the Plan contained in the . . . Summary Plan Description and Plan Document, as well as the information submitted in your letter of appeal.
>
> Section 6.08(B) of the Plan provides a list of expenses that are not covered under the Comprehensive Major Medical Benefit. Section 6.08(B)(11) of the Plan specifically excludes "non-emergency plastic or cosmetic surgery except as specifically provided."
>
> In your letter of appeal, you explain that the only way to assess the risk of Anaplastic Large Cell Lymphoma (ALCL) is to remove your breast implants, and you feel that is a sufficient reason the procedure should be covered by the Plan. With your letter of appeal, the diagnostic notes of Dr. Neil Kundu, from June 12, 2020, were also submitted as to his recommendation for the procedure to explant the implants with a complete capsulectomy to definitively confirm a diagnosis of ALCL.
>
> While the Board sympathizes with your situation, it has a duty to administer the terms of the Plan in a uniform and consistent manner. Because your revision of breast augmentation surgery is a cosmetic procedure, the Board voted to deny your claim on appeal.

*Id.* at PageID 105. The letter advised Mr. and Mrs. Annis of their right to file suit under ERISA, which is now before the Court. The parties filed their cross Motions for Summary Judgment on December 17, 2021. The Motions are fully briefed and are ripe for adjudication.

## II.     KEY PLAN TERMS

It is "a fundamental principle of ERISA law—the plain language of the plan controls." *West v. AK Steel Corp. Ret. Accumulation Pension Plan*, 318 F. Supp. 2d 579, 585 (S.D. Ohio

2004) (Beckwith, J.) (citation omitted). Accordingly, the Court's "starting point is the language of the Plan itself." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 343 (6th Cir. 2011).

The Plan includes a Major Medical Benefit that covers certain "Medically Necessary services and supplies." Plan, § 6.08.A; *see generally* Doc. 13, PageID 150–58. Covered Medical Expenses are subject to Plan maximums and exclusions. *Id.* at Page ID 151. The Plan further provides that "[n]o benefits will be payable which are not specifically included under the terms of the Plan or which are specifically excluded from coverage." Plan § 6.08.B; *id.* at PageID 155–56. One such specific exclusion is for "non-emergency plastic or cosmetic surgery except as specifically provided." Plan, § 6.08.B.11; *id.* at PageID 156. Elsewhere, the Plan reiterates that it "will not pay benefits for any charges not specifically listed as a [sic] Covered Medical Expenses under the Plan." Plan, § 11.02; *id.* at PageID 173.

Finally, the Plan grants the Board "full and exclusive authority to determine all questions of coverage and eligibility" and "discretionary authority to interpret the terms of the Plan . . . and to determine eligibility and entitlement to benefits in accordance with the terms of the Plan." Plan, § 14.01.B; *id.* at PageID 180.

### III.  STANDARD OF REVIEW

When a challenge to the denial of benefits under ERISA § 502 is presented, the plaintiff must prove by a preponderance of evidence that she is entitled to receive the benefit. *Javery v. Lucent Tech., Inc. Long Term Disability Plan*, 741 F.3d 686, 700–701 (6th Cir. 2014) (citing *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 F. App'x 511, 516 n.4 (6th Cir. 2006) (plaintiff bears the burden of proof in an ERISA benefits case)). Courts typically undertake a *de novo* review of a challenge to a plan administrator's decision. *Javery*, 741 F.3d at 694. But

5

that is not the case where the plan expressly grants its administrator or fiduciary discretionary authority "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (additional citation omitted). If a plan does grant such discretionary authority, "application of the highly deferential arbitrary and capricious standard of review is appropriate[.]" *Yeager*, 88 F.3d at 380. In the case at bar, the parties agree that the arbitrary and capricious standard applies.[2]

"A decision reviewed according to the arbitrary and capricious standard must be upheld if it results from 'a deliberate principled reasoning process' and is supported by 'substantial evidence.'" *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). It is important to remember that judicial review is not a "rubber stamp[ ]." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006). Rather the court must examine the "quantity and quality of the medical evidence on each side." *Schwalm*, 626 F.3d at 308 (citing *Evans*, 434 F.3d at 876). "[T]hough the [arbitrary and capricious] standard is not without some teeth, it is not all teeth." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014). "'When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (quoting *Davis v. Ky. Fin. Cos. Ret.*

---

[2] Although the parties argue under the correct standard, their submissions, both titled "Motions for Summary Judgment," also include the Rule 56 standard of review. (*See* Docs. 14, 15.) The Sixth Circuit recently reiterated that "Rule 56 does not apply to the adjudication of ERISA denial-of-benefits claims." *Kramer v. Am. Elec. Power Exec. Severance Plan*, 128 F.4th 739, 752 (6th Cir. 2025); *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) (concluding that "the concept of summary judgment is inapposite to the adjudication of an ERISA action"). The Court thus construes the Motions as motions for judgment on the administrative record.

*Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Importantly, however, when reviewing a denial of benefits in an ERISA case, a court "may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

IV.   **LAW AND ANALYSIS**

Defendants argue that the claim denial in this proceeding should be upheld because it was a reasonable exercise of the discretion granted to the Board under the Plan. Doc. 14, PageID 280. Defendants posit that the Board reasonably interpreted the cosmetic-surgery exclusion to extend to care rendered to address complications that developed from cosmetic surgery performed earlier on Mrs. Annis. *Id.*

The Court agrees with Defendants. The conclusion is supported by both the plain language of the Plan and the record. The Plan covers certain medically necessary expenses *subject to* the Plan's exclusions. The Plan excludes non-emergency cosmetic surgery. *See* Plan, § 6.08.B.11; Doc. 13, PageID 156. Further, the Plan *ex*cludes coverage for charges not specifically *in*cluded as covered. Plan § 6.08.B; *id.* at PageID 155–56. As to the contents of the record, nothing before the Board suggested that Dr. Kundu had any reason to suspect that Mrs. Annis had BIA-ALCL *except* the presence of the implants. Indeed, her core biopsy showed no malignant cells. Based on this evidence, it was thus reasonable for the Board to deny a claim for services made necessary only because of Mrs. Annis's earlier (excluded) cosmetic surgery. *Accord Livingston v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 900 F. Supp. 108, 118 (E.D. Mich. 1995) (concluding that defendant "had a reasonable basis for the denial of plaintiffs' claims" when defendant's medical expert found that the claims were to address complications of earlier excluded cosmetic surgery). The Court finds that this

7

outcome was neither "'arbitrary [n]or capricious.'" *Shields*, 331 F.3d at 541 (quoting *Davis*, 887 F.2d at 693).

Plaintiffs make several arguments for the opposite conclusion. None is availing. First, they argue that the surgery was medically necessary because Dr. Kundu advised that it was the only way to definitively rule out BIA-ALCL. Doc. 15, PageID 297. Although a reasonable argument may be made that the surgery was medically necessary, the argument is misplaced because the Plan does not define cosmetic surgery and medically necessary surgery as mutually exclusive. Second, Plaintiffs argue the Board inappropriately disregarded the opinion of Mrs. Annis's treating physician. Doc. 16, PageID 305. But the Board *did* consider Dr. Kundu's opinion. *See* Doc. 13, PageID 105. The Board did not disagree with Dr. Kundu's recommended *medical* approach so much as it disagreed about whether that approach's *coverage* under the Plan. *Id*. Finally, Plaintiffs argue that the Plan "suffers from an inherent conflict of interest" because it both assesses and pays claims. Doc. 15, PageID 294. As Defendants point out, however, jointly administered multiemployer plans—like the Plan here—can operate under this structure without giving rise to an untenable conflict. *See Klein v. Cent. States, Se. & Sw. Areas Health & Welfare Plan*, 346 F. App'x 1, 5 (6th Cir. 2009) (collecting cases).

## V. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 14) and **DENIES** Plaintiffs' Motion for Summary Judgment. Doc. 15. The Court **ORDERS** the Clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

June 25, 2025

Jeffery P. Hopkins
United States District Judge